[Cite as *State ex rel. Grayson v. Ohio Adult Parole Auth.*, 2017-Ohio-753.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. John Grayson, | : | |
| Relator, | : | |
| v. | : | No. 15AP-793 |
| Ohio Adult Parole Authority Department of Rehabilitation & Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

D E C I S I O N

Rendered on March 2, 2017

**On brief:** *John L. Grayson,* pro se.

**On brief:** *Michael DeWine,* Attorney General, and *William D. Maynard,* for respondent.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator John Grayson has filed an original action requesting this court issue a writ of mandamus ordering respondent Ohio Adult Parole Authority to immediately conduct a parole hearing in which the decision to grant or deny parole is based on the Ohio Parole Board Guidelines Manual, effective July 1, 2007 and rescinded as of April 1, 2010.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this

court deny relator's request for a writ of mandamus.  No objections have been filed to that decision.

{¶ 3}   Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.   In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.

*Writ of mandamus denied.*

SADLER and DORRIAN, JJ., concur.

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. John Grayson, | : | |
| Relator, | : | |
| v. | : | No. 15AP-793 |
| Ohio Adult Parole Authority Department of Rehabilitation & Correction, | : | (REGULAR CALENDAR) |
| | : | |
| Respondent. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 14, 2016

*John L. Grayson,* pro se.

*Michael DeWine,* Attorney General, and *William D. Maynard,* for respondent.

IN MANDAMUS

{¶ 4} In this original action, relator, an inmate of the Grafton Reintegration Center ("GRC"), requests a writ of mandamus ordering respondent, Ohio Adult Parole Authority ("respondent" or "OAPA"), to immediately conduct a parole hearing in which the decision to grant or deny parole is based upon the Ohio Parole Board Guidelines Manual, Third Edition, effective July 1, 2007 ("2007 guidelines manual" or "manual"), that was rescinded by respondent as of April 1, 2010. Relator contends that respondent's failure to apply the 2007 guidelines manual is a violation of the Ex Post Facto Clause of the United States Constitution.

Findings of Fact:

{¶ 5}   1. Since 1975, relator has been imprisoned approximately five times before his current incarceration for various criminal convictions.

{¶ 6}   2. Currently, the Bureau of Sentence Computation of the Ohio Department of Rehabilitation & Correction ("ODRC") has calculated the maximum expiration of sentence to be July 12, 2026.

{¶ 7}   3. Relator's latest incarceration results from his conviction for drug trafficking in the Cuyahoga County Court of Common Pleas.  On January 21, 2010, the court imposed a prison sentence of eight months.   That prison term expired on September 19, 2010.

{¶ 8}   4. Since his present incarceration, relator has appeared before the Ohio Parole Board ("board") four times and has been denied release in each instance.  In each instance, continued incarceration was justified by a finding that there is substantial reason to believe that relator will engage in further criminal conduct if released.

{¶ 9}   5. The four board hearings during relator's present incarceration were held respectively on August 9, 2010, June 13, 2011, November 2, 2012, and August 12, 2014.

{¶ 10}  6. As to each hearing, an ODRC form was completed by a board member to document the board decision.  The form is captioned "Ohio Parole Board Decision" and is divided into seven sections.

{¶ 11} At section 3(A), the board member is asked to mark a box indicating that "[t]he mandatory factors indicated in AR 5120 1-1-07 were considered."

{¶ 12} At section 3(B), the board is asked to provide the rational for the decision. At section 4, boxes identified as A through D are provided for marking.  The pre-printed statements beside each box state:

> A. * * * There is substantial reason to believe that the inmate will engage in further criminal conduct, or that the inmate will not conform to such conditions of release as may be established under AR 5120 1-1-12.
>
> B. * * * There is substantial reason to believe that due to the serious nature of the crime, the release of the inmate into society would create undue risk to public safety, or that due to the serious nature of the crime, the release of the inmate

would not further the interest of justice or be consistent with the welfare and security of society.

C. * * * There is substantial reason to believe that due to serious infractions of division level 5120 9-06 of the Administrative Code, the release of the inmate would not act as a deterrent to the inmate or to other institutionalized inmates from violating institutional rules.

D. * * * Not applicable.

{¶ 13} 7. The form completed by the board for the August 9, 2010 hearing indicates that consideration of parole is "continued" to August 1, 2011. That is, parole is denied but will be reconsidered on or before August 1, 2011. At section 4, boxes A, B, and C are marked.

{¶ 14} At section 3(B), in the space provided, the following rational is provided:

The Board has determined that the inmate is not suitable for release at this time. The inmate was convicted of Drug Trafficking while under supervision. [Inmate] has 5 prior commitments, and has shown a disregard for the law while under supervision. [Inmate] also has ticket violating institutional rules since his return.

{¶ 15} 8. The form completed by the board for the June 13, 2011 hearing indicates that consideration of parole is "continued" to December 1, 2012. That is, parole is denied subject to reconsideration on or before December 1, 2012.

{¶ 16} At section 4, boxes A and B are marked. Boxes C and D are not marked.

{¶ 17} At section 3(B), in the space provided, the following rational is provided:

The Board has determined that the inmate is not suitable for release at this time. This is [inmate]'s 6th commitment and he will be held accountable, extensive criminal history continues to be unsuccessful under supervision, multi-state offender.

{¶ 18} 9. The form completed by the board for the November 2, 2012 hearing indicates that consideration of parole is "continued" to October 1, 2014. That is, parole is denied subject to reconsideration on or before October 1, 2014.

{¶ 19} At section 4, only box A is marked. Boxes B, C, and D are not marked.

{¶ 20} At section 3(B), in the space provided, the following rational is provided:

Inmate's risk to reoffend is elevated by his criminal history, as this is his 6th Ohio prison admission. He has one in Indiana as well. He has completed relevant programming, and his conduct has improved. But it is not clear that he has changed sufficiently to overcome his static risk. This leads the Board to conclude that the inmate would engage in further criminal conduct if released. After weighing relevant factors, the Central Office Board Review does not consider the inmate suitable for release and assesses a two year continuance.

{¶ 21} Apparently, the November 2, 2012 hearing involved "Central Office Board Review," as indicated on the completed form.

{¶ 22} 10. The form completed by the board for the August 12, 2014 hearing indicates that consideration of parole is "continued" to August 1, 2016. That is, parole is denied subject to reconsideration on or before August 1, 2014.

{¶ 23} At section 4, boxes A and B are marked. Boxes C and D are not marked.

{¶ 24} At section 3(B), in the space provided, the following rational is provided:

Inmate Grayson is assessed as a moderate risk to reoffend. Inmate Grayson has a continuous pattern of criminal behavior since 1974. Six adult incarcerations in Ohio (two in other States), 6 releases 5 Parole failures [with] recommitments for new felony behavior. He has an extensive history of violent offenses, having weapons, and not being successful on supervision. He lacks the ability to control his behavior as evidenced by his extensive aggravating criminal history. His release plans of past paroles have not curbed his substance abuse and criminal behaviors. The aggravating factors in this case lead the Board to conclude that release would demean the seriousness of the offense and not further the interest of justice. After weighing relevant factors, the Board does not consider the inmate suitable for release at this time and assesses a two year continuance.

{¶ 25} 11. The record contains a copy of the 2007 guidelines manual.

{¶ 26} The manual is 60 pages in length. The manual's preface is written by Chairperson, Cynthia Mausser. The third paragraph of the preface states:

The guideline ranges are a suggestion of time to be served for the typical or average cases and presume good institutional behavior. However, the ranges should not be interpreted as mandating release within the range. The guideline ranges do not usurp the Parole Board's discretion and authority to

release an inmate at any time after service of the minimum sentence prior to the expiration of the maximum sentence. The applicable guideline range is meant solely to suggest an initial threshold (a suggested starting point of analysis) toward making a full and fair assessment of all relevant factors, indicators and other considerations in determining the inmate's suitability for release.

{¶ 27} The manual is divided into parts A and B.  Part A provides the "Parole Guidelines Chart."  The Parole Guidelines Chart is explained:

The Parole Guidelines Chart sets forth the applicable guideline range for the typical or "heartland" case based on the seriousness of the inmate's current offense of conviction and the offender's Criminal History/Risk Score. The guideline ranges acknowledge statutory eligibility for release upon service of the minimum sentence as indicated by the term "min" at the bottom of each range. The guideline ranges are a suggestion of time to be served in months for the typical or average case. However, the ranges should not be interpreted as mandating release within the range. The guideline ranges are meant to serve as one of the tools in the release decision making process, and do not usurp the Parole Board's discretion and authority to release an inmate at any time after service of the minimum sentence prior to the expiration of the maximum sentence. The applicable guideline range is meant solely to suggest an initial threshold (a suggested starting point of analysis) toward making a full and fair assessment of all relevant factors, indicators and other considerations in determining the inmate's suitability for release.

The applicable guideline range presumes good institutional conduct, fulfillment of any special conditions imposed by the Parole Board, and the development of a suitable release plan.

{¶ 28} Part B of the manual is divided into ten chapters.  Each of the ten chapters contains sub chapters.

{¶ 29} Chapter 10, subchapter C(4)(b)(ii) provides:

*Definite sentences*: Any offense or offenses for which an offender was convicted while on parole and for which an offender received a definite sentence shall not have an offense category assigned. If the conviction is an SB2 definite sentence, the SB2 sentencing range for the felony level of the offense of conviction will be noted in the Decision Sheet. The

> guideline range will reflect the SB2 equivalent penalty for a post-release violation of 0-9 months.

(Emphasis sic.)

{¶ 30} 12. The record contains the affidavit of Cynthia Mausser executed February 29, 2016. The Mausser affidavit states:

> [Two] I currently serve as a Managing Director for the Ohio Department of Rehabilitation and Correction ("ODRC"). The Division of Parole and Community Services in [sic] under my supervision. I previously served as Chairperson of the Ohio Parole Board ("Parole Board"), from April 2006 until May of 2015. Prior to that time period, I was appointed as a member of the Board in December of 2001.
>
> [Three] As the Chairperson of the Parole Board, I authorized the implementation of the 2007 version of the Ohio Parole Guidelines. My statement appears in the preface of the Guidelines. I am familiar with how the 2007 Guidelines applied to determine whether a parolee was suitable for release. As Chairperson of the Parole Board, I presided over parole hearings while the 2007 Guidelines were in place.
>
> [Four] Inmates that are eligible for parole have been previously convicted of crimes with indeterminate terms of imprisonment, prior to the enactment of Ohio Senate Bill 2 ("SB2") on July 1, 1996. These inmates, known as "old law inmates," have been subject to the discretionary releasing authority of the Parole Board, including the time when the 2007 Guidelines were in place and after they were rescinded in 2010. The 2007 Guidelines would provide a suggested suitable range of time for release of old law inmates with indefinite sentences using a two-dimensional matrix chart, based on an offense category and the parolee's criminal history. This suggested release time, however, would only function as a non-mandatory structured starting point in the decision-making process. The Guidelines would not usurp the Parole Board's traditional discretion and authority to release an inmate at any time after service of the minimum sentence prior to the expiration of the maximum sentence. The Parole Board would rely on the factors set out in O.A.C. 5120:1-1-07 to guide its discretion.
>
> [Five] Not all parolees would receive a suggested suitable release time range using the matrix chart. An inmate was considered to be a parole violator recommissioned ("PVR")

if, while released on parole, he was sentenced for a new felony. Under Chapter Ten, Subchapter C(4)(b)(ii) of the 2007 Guidelines, a PVR offender that was convicted for a definite sentence while on parole would not be assigned an offense category. Under this provision, an inmate convicted under a definite sentence under SB2 would receive a guideline range that would reflect the SB2 equivalent penalty for a post-release violation of zero-to-nine months. This was put in place because Senate Bill 2 established post-release control in which a penalty for an inmate violating post-release control could result in imprisonment for zero-to-nine months. However, this range would only serve as a starting point in evaluating whether an old law inmate was suitable for release. This suggested starting point would not take into account the inmate's criminal history and history of previous incarcerations. The Parole Board would still have the full discretion to consider these issues to keep an inmate incarcerated beyond the initial range.

[Six] I cannot speculate as to how the Parole Board would have applied the 2007 Guidelines had inmate John Grayson appeared before it during a hearing when the 2007 Guidelines would have been in effect. However, it is unlikely that the Parole Board would not have taken Grayson's extensive criminal history and prior incidences of incarceration into account.

[Seven] The 2007 Guidelines were rescinded by the Parole Board as of April 1, 2010. The Ohio Parole Board Handbook that was later produced and published to explain the Parole Board hearing process clarified the removal of guideline ranges from the Parole Board's evaluation in determining the suitability of an inmate's release. Instead, the Parole Board would rely on the factors set out in O.A.C. 5120:1-1-07 to determine suitability. The factors of O.A.C. 5120:1-1-07 guided the Board's discretion both before and after the guideline ranges were rescinded in 2010.

[Eight] While I was Chairperson of the Parole Board, Grayson received four parole hearings since he was incarcerated in 2010 for drug trafficking. These occurred on August 9, 2010; June 13, 2011; November 2, 2012; and August 12, 2014. The factors of O.A.C. 5120:1-1-07 were evaluated by the Parole Board to determine that Grayson was not suitable for release. The Parole Board's rationale for denying parole to Grayson are reflected in the documents entitled "Ohio Parole Board Decision and Minutes"

("Decision Sheets"). A common rationale identified in the Decision Sheets for denying parole to Grayson following each hearing was his extensive criminal history, which included five previous incarcerations. Thus, the Board denied parole each time partly due to the potential of Grayson to engage in further criminal conduct.

{¶ 31} 13. The record also contains a copy of the Ohio Parole Board Handbook ("handbook"), dated July 2015.

{¶ 32} The introduction to the handbook provides the historical context of the 2007 guidelines manual:

> Previously, the Board developed and used a number of tools to promote consistency with its release decisions because of the large diversity of crimes committed by inmates in the DRC. The tools were part of The Ohio Parole Board Guidelines Manual, initially developed in 1998, and amended in 2000 and 2007. Since Senate Bill 2 ("SB2"), the "truth in sentencing" legislation enacted in 1996, the once diverse population subject to the releasing authority of the Board has significantly narrowed. Most of this population is serving sentences for crimes that have unique factors that thwart any effort to generalize a suggested range of time or specify common risk factors. In April 2010, use of the Ohio Parole Board Guidelines Manual was determined to be no longer practical or effective, and the Board discontinued its application at subsequent release consideration hearings. Accordingly, after April 1, 2010, the Board continued to exercise its discretionary release authority solely by reference to Ohio statute and administrative code provisions. In addition, all parole suitability determinations are now decided by a majority vote of the Board. These votes are based upon consideration of the unique factors and variables of the individual case.

{¶ 33} 14. On August 21, 2015, relator filed this mandamus action against respondent.

{¶ 34} 15. On September 22, 2015, respondent moved for dismissal of this action on grounds that the complaint allegedly fails to state a claim upon which relief can be granted. (Civ.R. 12(B)(6)). On October 9, 2015, relator opposed respondent's motion to dismiss.

{¶ 35} 16. On February 2, 2016, the magistrate issued an order denying respondent's motion to dismiss. The magistrate also issued a schedule for the filing of evidence and briefs.

{¶ 36} 17. On February 23, 2016, pursuant to the magistrate's schedule, relator filed a document captioned "Relator's Presentation of Evidence, Pursuant to Local Rule 13(G)."

{¶ 37} 18. On February 29, 2016, respondent filed a document captioned "Respondent's Submission of Certified Evidence." Therein, respondent submitted the affidavit of Cynthia Mausser aforementioned. Also, respondent submitted a letter dated February 23, 2016 from Barb Pond who is employed by ODRC as a "Correctional Record Sentence Computation Auditor/Records Supervisor." Pond is employed in the ODRC's Bureau of Sentence Computation within the Division of Legal Services. The February 23, 2016 Pond letter is addressed to a paralegal employed at the office of the Ohio Attorney General.

{¶ 38} 19. On February 29, 2016, relator filed his merit brief pursuant to the magistrate's briefing schedule.

{¶ 39} 20. On April 1, 2016, respondent filed its merit brief.

{¶ 40} 21. On April 18, 2016, relator filed his reply brief.

{¶ 41} 22. This action is now before the magistrate for the rendering of his magistrate's decision in this action.

Conclusions of Law:

{¶ 42} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

{¶ 43} This action was prompted by the decision of the United States Supreme Court in *Garner v. Jones,* 529 U.S. 244 (2000), and the decision of the Sixth Circuit Court of Appeals in *Michael v. Ghee,* 498 F.3d 372 (2007), which applied the holding of *Garner* to a case involving an Ohio inmate.

{¶ 44} However, in *Michael,* it was the 1998 Ohio Parole Board Guidelines Manual ("1998 Guidelines Manual") that was at issue under the Ex Post Facto clause of the United States Constitution.

{¶ 45} In *Michael,* the Sixth Circuit provides a summary and analysis of *Garner*:

> In 1998, the OAPA adopted guidelines designed to guide the discretion of parole officers making release determinations for Ohio inmates sentenced prior to July 1, 1996. The guidelines are similar to the guidelines used by the United States Parole Commission, using two factors to determine how long a prisoner should be incarcerated before parole: (1) the seriousness of the inmate's crime, and (2) the "risk of reoffense," based on the inmate's prior criminal conduct and performance on probation and parole. The presumptive amount of time an inmate serves is determined by finding the intersection on a grid between the inmate's offense category and his or her risk of reoffense. Parole officials, however, retain discretion to depart from the guidelines, but may not retain an inmate beyond the maximum sentence. See OHIO REV. CODE § 2967.03 (describing the OAPA's broad discretionary powers).
>
> * * *
>
> In *Garner*, the Court considered an ex post facto challenge to the retroactive application of a Georgia regulation permitting the extension of intervals between parole violations. *Id.* at 247. Under Georgia law, the state's parole board was required to consider inmates serving life sentences for parole after seven years. *Id.* (citing GA. CODE ANN. § 42-9-45(b) (1982)). At the time the *Garner* respondent committed his second offense, the parole board's regulations required parole reconsiderations to take place every three years. *Id.* In 1985, after the respondent had begun serving his second life sentence, the parole board amended its rules and regulations to provide that "reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years." *Id.* (quoting GA. COMP. R. & REGS., Rule 475-3-.05(2) (1985)). The Parole Board considered the respondent for parole in 1989, seven years after his 1982 conviction. *Id.* After denying release, reconsideration was set for 1997, eight years later and consistent with Rule 475-3-.05(2). *Id.*
>
> The Court concluded that, on its face, the new parole board regulation did not pose a significant risk of lengthening the respondent's time of imprisonment. *Id.* at 256. The Court noted two important aspects of the new regulation. First, the amendment "vests the Parole Board with discretion as to how often to set an inmate's date for reconsideration, with

eight years for the maximum." *Id.* at 254 (quoting GA. COMP. R. & REGS., Rule 475-3-.05(2) (1985)) ("Reconsideration . . . shall take place at least every eight years."). Second, the parole board's policies permit "expedited parole reviews in the event of a change in their circumstances or where the Board receives new information that would warrant a sooner review." *Id.* These characteristics were significant because they "permit a more careful and accurate exercise of the discretion the Board has had from the outset." Id. "The policy enables the Board to put its resources to better use, to ensure that those prisoners who should receive parole come to its attention." *Id.*

* * *

After *Garner*, the relevant inquiry, therefore, is not whether the challenged parole regulation is a "law" or whether the guidelines present a significant risk of increasing the plaintiff's maximum penalty, but rather whether the new guidelines present a significant risk of increasing the plaintiff's amount of time actually served. *See Garner*, 529 U.S. at 255 ("When the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the current rule."); *Id.* ("In the case before us, respondent must show that as applied to his own sentence the law created a significant risk of increasing his punishment."). *See also Fletcher v. Reilly*, 369 U.S. App. D.C. 100, 433 F.3d 867, 869-70 (D.C. Cir. 2006) (observing that it is clear after *Garner* that "the critical question in ex post facto challenges to retroactively applied parole/reparole regulations is whether, as a practical matter, the retroactive application creates a significant risk of prolonging an inmate's incarceration").

* * *

The relevant inquiry in this case, then, is whether retroactive application of the 1998 Ohio guidelines creates a "sufficient risk of increasing the measure of punishment attached to the covered crimes." *Garner*, 529 U.S. at 250; *Dyer*, 465 F.3d at 285. Plaintiffs can satisfy this burden in one of two ways. First, plaintiffs can establish an ex post facto violation if they can show that the guidelines, on their face, show a significant risk of increased incarceration. *Garner*, 529 U.S. at 255.

Second, when the guidelines do not by their own terms show a significant risk, plaintiffs "must demonstrate, by evidence drawn from the [guideline's] practical implementation by the agency charged with exercising discretion, that its application will result in a longer period of incarceration than under the earlier [guidelines]." *Id.*; see also *Dyer*, 465 F.3d at 291 (observing that "even when considering substantive changes to parole provisions, the Supreme Court has relied on evidence of actual disadvantage" to the plaintiff). Plaintiffs need not show an actual increase in punishment, but rather a "sufficient risk" of increased punishment. *Dyer*, 465 F.3d at 288.

*Id.* at 374, 381-84.

{¶ 46} In his brief, relator posits:

**Michael v. Ghee 498 F.3d (6th Circuit 2007),** addresses the 1998 changes to Ohio parole guidelines, and is directly on point, and establishes the fact that an Ex-Post Facto violation has occurred in the case of the Relator herein.

The **Michael** Court establishes the relevant inquiry for finding violations of the Ex-Post Facto Clause, "Whether retroactive application of the 1998 Ohio Guidelines creates a sufficient risk of increasing the measure of punishment attached to the covered crimes," *Id.* At **384** quoting **Garner v. Jones, 529 U.S. 244, 250**.

(Emphasis sic.) (Relator's brief at 3-4.)

{¶ 47} In his reply brief, relator succinctly explains his position:

In 2010, Relator Grayson was sentenced to serve a definite term of eight (8) months, which made him technically eligible for parole immediately after the eight months were served. Realtor [sic] claims that his parole hearing should have been heard under the 2007 Parole Guidelines of 0 to 9 months, which was applicable to the Relator when he committed his crimes. After the Relator was sentenced, the applicable parole rules were amended. The amended parole rules eliminated the 0 to 9 months and replaced it with discretionary hearings that resulted in the realtor [sic] receiving continuances of (1) one year (18) eighteen months (2) two years and (2) two years.

(Relator's reply brief at 5.)

{¶ 48} In its brief, respondent argues:

> Relator cannot argue that the rescission of the * * * Guidelines resulted in a sufficient risk in the increase of his imprisonment following the rescission of the 2007 Guidelines, when he was incarcerated in 2010. The Parole Board in each of the four parole hearings that occurred for Relator subsequent to 2010 justified denying his release due to the risk that Relator would engage in further criminal conduct, which is a factor of O.A.C. 5120:1-1-07.
>
> * * *
>
> Relator points out that under the 2007 Guidelines, the S.B. 2 equivalent penalty for Relator's conviction, for which he received a definite sentence, was incarceration for 0-9 months, citing to Chapter 10, subchapter C(4)(b)(ii). * * * Relator is misinterpreting the 2007 Guidelines. These Guidelines did not mandate the release of a parole violator, who received a definite sentence for a new conviction, after nine months.
>
> * * *
>
> The entire premise of Relator's argument is therefore incorrect. Relator argues that the Parole Board lacked discretion under the 2007 Guidelines to deny parole, while under the current system, the Board has wide-ranging discretion to do so. That premise is wrong because the Parole Board always had the discretion to deny Relator parole. The Guidelines were advisory, and Relator, as explained by Mausser, was never entitled to mandatory release after serving 9 months for his present incarceration. The maximum expiration date of Relator's sentence, due to his previous convictions, still ended on 2026. The Parole Board, before and after the existence of the 2007 Guidelines, still had the power to exercise their discretion, relying on the factors of O.A.C. 5120:1-1-07, to deny release from imprisonment.

(Respondent's brief at 16-18).

{¶ 49} The magistrate agrees with respondent. Relator has failed to show that the rescission of the 2007 guidelines manual creates a sufficient risk of increasing the measure of punishment attached to the covered crimes.

{¶ 50} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).